Filed 3/12/26  P. v. Gee CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ERIC GEE et al.,<br><br>    Defendants and Appellants. | B337471<br><br>(Los Angeles County<br>Super. Ct. No. TA138346) |

APPEALS from an order of the Superior Court of Los Angeles County.  Pat Connolly, Judge.  Reversed and remanded with directions.

Ralph H. Goldsen, under appointment by the Court of Appeal, for Defendant and Appellant Eric Gee.

Edward H. Schulman, under appointment by the Court of Appeal, for Defendant and Appellant Antone Presley.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Michael J. Wise, Deputy Attorneys General, for Plaintiff and Respondent.

_____

## INTRODUCTION

In October 2015, Eric Gee, Antone Presley, and Julius Sanders[1] participated in a drive-by shooting in rival gang territory. Gee, Presley, and Sanders pled no contest to the attempted murder of a John Doe victim. Gee admitted that a principal used a firearm under Penal Code[2] section 12022, subdivision (b)(1), and Presley admitted that he personally used a firearm under section 12022.53, subdivision (b).

Gee and Presley later filed resentencing petitions under section 1172.6. The court found that Gee and Presley made prima facie showings of eligibility for resentencing and scheduled an evidentiary hearing.

At the evidentiary hearing, the People presented footage from surveillance cameras that captured portions of the shooting, as well as testimony from a gang expert and another officer who investigated the shooting. The footage shows that shots were fired out of the car in which Gee, Presley, and Sanders were riding as the car drove through an apartment complex in rival gang territory. The footage does not show where Gee, Presley, and Sanders were sitting in the car, nor does it show who or how many people fired shots from the car. The footage also does not show where or at whom any of the shots were fired. No percipient witnesses testified about the shooting, including any witnesses who could explain who fired the shots from the car, who were the intended targets of the shooting, or whether any people were near the area at which the shots were fired.

---

[1]    Sanders is not a party to this appeal.
[2]    All undesignated statutory references are to the Penal Code.

Nevertheless, the trial court found beyond a reasonable doubt that Gee and Presley acted with the intent to kill when they participated in the shooting, and it denied their resentencing petitions.

On appeal, Gee and Presley argue insufficient evidence supports the trial court's finding that they acted with the intent to kill. We agree. Accordingly, we reverse the order denying Gee's and Presley's petitions and remand the matter with directions for the trial court to grant their resentencing petitions, vacate their attempted murder convictions, and resentence them on the remaining charges.

## FACTUAL BACKGROUND

In 2015, Gee, Presley, Sanders, and George Stanford were members of the Grape Street Crips (Grape Street). Around late September 2015, a young member of Grape Street was killed. The police identified members of the Bounty Hunters, one of Grape Street's rival gangs, as suspects in the killing.

On October 3, 2015, Gee, Presley, Sanders, and Stanford drove in Stanford's car from Palmdale to Los Angeles to celebrate "Hood Day," a Grape Street holiday commemorating members of the gang who had passed away. Gee drove while Presley sat in the front passenger seat, and Sanders and Stanford sat in the back passenger seats.

When they got to Los Angeles, the group went to a night club until around 2:00 a.m. After dropping Stanford and a woman off at an unknown location, Gee, Presley, and Sanders continued to use Stanford's car. Several hours later, Sanders called Stanford to tell him that "it's all bad," that "homies got shot," and that his car had been abandoned in "Nickerson

Gardens," a housing development claimed by the Bounty Hunters.

The Los Angeles Police Department maintains a network of security cameras in Nickerson Gardens. The cameras continuously record footage, which is sent directly to the police department. At the evidentiary hearing in this case, the People introduced footage captured by several cameras in Nickerson Gardens between 3:22 and 3:30 a.m. on October 4, 2015.

The footage from one of the cameras facing northeast along Zamora Street shows Stanford's car turn south onto Zamora Street from 112th Street at around 3:22 a.m. The car drives south for about one block before slowing down in front of an "inlet to a parking lot." The car stops for a couple of seconds on the west side of the street, near the far left side of the screen, as two gunshots are fired straight out from the passenger side of the car. Because the car is positioned on the far left side of the screen, the footage does not show where or at whom those two shots were fired. Although it is unclear from our review of the video, one of the investigating officers testified that he saw a muzzle flash come from the driver's side of the car when he watched the video.

Shortly after the shots were fired from Stanford's car, a person gets out of a car parked on the east side of Zamora street, across the street from the driver's side of Stanford's car. That person leans across the roof of the parked car and fires a gun at the driver's side of Stanford's car. Stanford's car then starts to drive south on Zamora Street before crashing into several parked cars and traveling out of view of the camera. Several seconds after Stanford's car travels out of view, two people run into the street from the sidewalk on the west side of Zamora Street. About two minutes later, a different camera captures Gee, who is

4

carrying a rifle, and Presley walking down the sidewalk of a different street.

The police impounded Stanford's car. A nine-millimeter handgun and several nine-millimeter bullet casings were found on the driver's side of the car. Stanford's car was shot several times by incoming gun fire, including at least six shots fired at the driver's side of the car. Blood belonging to Presley was found on the front passenger seat of the car. Presley's left buttocks and Gee's left ear were wounded.

Although an investigating officer found "bullet strikes" on cars and walls near the scene of the shooting, no evidence was presented as to the source of those strikes. At least one casing from a round fired from a rifle was found at the scene. No victims or intended targets of the shots fired from Stanford's car were identified.

## PROCEDURAL BACKGROUND

In June 2016, the People filed an amended information charging Gee, Presley, and Sanders with the premeditated attempted murder of John Doe. The People also charged all three defendants with conspiracy to commit murder and shooting from an occupied vehicle, Presley with felony possession of a firearm, and Gee with attempted criminal threats. The People alleged various gang, firearm, and prior conviction enhancements.

In January 2017, Gee, Presley, and Sanders pled no contest to one count of generic attempted murder. Gee and Presley admitted prior strike allegations. Gee admitted that a principal used a firearm during the offense under section 12022, subdivision (b)(1), and Presley admitted that he personally used a firearm during the offense under section 12022.53, subdivision (b). The trial court sentenced Gee to 19 years and

5

Presley to 28 years in state prison. A different panel of this division affirmed Sanders's conviction on direct appeal in 2018.

Gee and Presley later filed resentencing petitions under what is now section 1172.6. The trial court found that Gee and Presley made prima facie showings of eligibility for resentencing and scheduled an evidentiary hearing.

At the evidentiary hearing, three witnesses testified for the people, Stanford and two investigating officers. The People introduced several exhibits, including the video footage from Nickerson Gardens that captured the shooting and subsequent events.

One of the investigating officers testified as a gang expert. The gang expert was familiar with Grape Street and the Bounty Hunters, and he knew that Gee, Presley, and Sanders were members of Grape Street.

The gang expert opined that the underlying shooting would benefit Grape Street because street gangs often commit drive-by shootings and other violent crimes to create "an atmosphere of fear and intimidation." People living in areas where these crimes are committed are less likely to call the police, which enhances the gang's ability to defend their territory. The gang expert also opined that younger Grape Street members may commit violent crimes on or near the gang's "Hood Day" to prove their loyalty to the gang and propensity for violence. In addition, the gang expert expected members of Grape Street to retaliate against the Bounty Hunters for the murder of the young Grape Street member around late September 2015.

Following the evidentiary hearing, the trial court denied Gee's and Presley's resentencing petitions. Relevant here, the court found beyond a reasonable doubt that Gee and Presley

6

acted with the intent to kill when they participated in the shooting in Nickerson Gardens. The trial court reasoned that armed members of Grape Street would not enter their rival gang's territory during a period of conflict between the gangs unless they had the intent to kill. The court found that there was no evidence to support a finding that Gee and Presley acted out of self-defense when they participated in the shooting. The court explained that "it defies logic, it defies reason . . . to find that there is anything other than the intent to kill by everyone in that vehicle, not just when they fired, but when they went into Nickerson Gardens armed for what they were going to do. [¶] So with that, the court does find beyond a reasonable doubt that there was an intent to kill and that was exhibited by both Mr. Gee and Mr. Presley at the time this occurred."

## DISCUSSION

The Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess.) to eliminate the natural and probable consequences doctrine and to limit application of the felony murder rule. (*People v. Curiel* (2023) 15 Cal.5th 433, 448–449.) Except in cases of felony murder, a principal must act with malice aforethought to be convicted of murder, and malice "shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) A defendant convicted of murder or attempted murder under a now-invalid theory may petition the sentencing court to have his or her conviction vacated and to be resentenced on any remaining counts under section 1172.6. (*People v. Strong* (2022) 13 Cal.5th 698, 708.)

If the defendant files a facially sufficient petition requesting appointment of counsel, the trial court must appoint counsel and hold a hearing to determine whether the petitioner

7

has made a prima facie showing of eligibility for relief.  (§ 1172.6, subds. (b)(3) & (c).)  If the defendant makes a prima facie showing, the court must hold an evidentiary hearing.  (*Id.*, subd. (d).)

At the evidentiary hearing, the prosecution bears the burden to prove beyond a reasonable doubt that the defendant is guilty of murder or attempted murder under a currently valid theory.  (§ 1172.6, subd. (d)(3).)  "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges."  (*Ibid.*)

We review the trial court's factual findings following a section 1172.6, subdivision (d) hearing for substantial evidence.  (*People v. Clements* (2022) 75 Cal.App.5th 276, 298.)  We review the entire record in the light most favorable to the court's order to determine whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt.  (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

Gee and Presley argue, among other things, that the trial court erred in denying their resentencing petitions because insufficient evidence supports the court's finding that they acted with the intent to kill when they participated in the shooting in Nickerson Gardens.  We agree.

"To prove the crime of attempted murder, the prosecution must establish 'the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.' "  (*People v. Canizales* (2019) 7 Cal.5th 591, 602.)  " 'To be guilty of attempted murder, the defendant must intend to kill the alleged victim, not someone else.' "  (*People v. Mumin* (2023)

15 Cal.5th 176, 191.)  A defendant cannot be convicted of attempting to kill someone if the defendant is not aware that person is present.  (*People v. Ibarra* (2024) 106 Cal.App.5th 1070, 1079, citing *Mumin*, at p. 191.)  Because direct evidence of a defendant's intent is rare, intent to kill may "be inferred from the defendant's acts and the circumstances of the crime."  (*People v. Smith* (2005) 37 Cal.4th 733, 741.)

A defendant may be convicted of attempted murder as a direct aider and abettor.  To be convicted under such a theory, the defendant " 'must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted murder as an aider and abettor must intend to kill.' " (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054.)

Insufficient evidence supports the trial court's finding that Gee and Presley acted with the intent to kill when they participated in the underlying shooting.  No victims or intended targets of the shooting were ever identified.  There is no evidence that anyone was struck, or could have been struck, by the shots that were fired from Stanford's car.  The primary evidence of what occurred during the shooting—the footage from the cameras in Nickerson Gardens—shows that shots were fired out of Stanford's car, in which Presley and Gee were riding.  The footage does not show where the shots were fired or who, if anyone, was targeted by, or otherwise could have been struck by, those shots.  No percipient witnesses testified that they saw anyone in Stanford's car fire shots.  Nor did any percipient witnesses identify anyone who could have been targeted or struck by the shots.  Although the shooting occurred in a housing

9

development, the People presented no evidence that any of the shots struck an occupied building or vehicle or otherwise could have struck any residents or bystanders in the complex. There simply is no evidence that Gee or Presley shot at another person or aided and abetted a direct perpetrator with the intent to kill.

In finding that Gee and Presley acted with the intent to kill, the trial court relied on evidence that defendants were members of Grape Street who drove into rival gang territory armed with guns. According to the court, it would "def[y] logic" to conclude that Gee and Presley entered Nickerson Gardens with anything but the intent to kill. We disagree.

As the People's gang expert testified, gang members commit armed offenses in rival gang territory for any number of reasons, including to create an atmosphere of fear and intimidation, to instill fear in civilians who live in that territory, to prove the members' loyalty and worth to their gang, or to retaliate for the rival gang's perceived indiscretions. We are not aware of authority that holds that any time a gang member fires a gun in a rival gang's territory, that gang member necessarily acts with the intent to kill. Without any evidence that someone inside Stanford's car targeted or otherwise shot at another person when they fired the underlying shots, we can only speculate as to whether Gee and Presley acted with the intent to kill. Speculation is not substantial evidence. (*People v. Waidla* (2000) 22 Cal.4th 690, 735.)

The trial court also improperly relied on its own experience as a former gang prosecutor when it denied Gee's and Presley's petitions, noting that it had prosecuted several cases against members of the Bounty Hunters in the 1990's in explaining why it found that Gee and Presley acted with the intent to kill.

10

"The court's personal experience is not evidence." (*Abatti v. Imperial Irrigation Dist.* (2020) 52 Cal.App.5th 236, 286.)

The People argue that they proved Presley was a direct perpetrator of attempted murder because he admitted that he personally used a firearm during the shooting. This argument lacks merit.

When admitting a sentencing enhancement, the defendant admits only the facts necessary to establish the enhancement's elements. (*People v. Estrada* (2024) 101 Cal.App.5th 328, 338.) Section 12022.53, subdivision (b) requires the People to prove only that the defendant "personally use[d] a firearm." (*Ibid.*) Nothing in that provision requires proof that the defendant intended any specific outcome result from his use of the firearm. Accordingly, by admitting the section 12022.53, subdivision (b) enhancement, Presley admitted only that he personally used a firearm. Presley did not admit, and the trial court did not find, that he discharged a firearm.

Even if there was evidence that Presley discharged a firearm, that does not necessarily mean that he was a direct perpetrator of attempted murder. At the time Presley entered his no contest plea, a defendant could be convicted of attempted murder under a natural and probable consequences theory. (*People v. Ramos* (2024) 103 Cal.App.5th 460, 465.) Here, Presley was charged with attempted murder *and* shooting from an occupied vehicle. It is undisputed that there were three people inside Stanford's car at the time of the shooting and that at least two guns were fired during the shooting. Thus, Presley could have discharged his gun as part of the target offense of shooting from an occupied vehicle, the natural and probable consequence of which was an attempted murder, where one of his cohorts was

11

the direct perpetrator of the attempted murder. Because there is no evidence showing where or at whom Presley may have fired his gun, the record does not support a finding that he was a direct perpetrator of the attempted murder.

The People also contend that because Presley was charged with conspiracy to commit murder, that proves that he acted with the intent to kill. But Presley never pled to the conspiracy charge. In fact, the People dismissed that charge when Presley pled no contest to attempted murder. It is axiomatic that the People's decision to charge a defendant with conspiracy to commit murder does not prove beyond a reasonable doubt that the defendant acted with the intent to kill.

Finally, the People argue that we should apply the "law of the case" doctrine to conclude substantial evidence establishes Presley and Gee were either direct perpetrators of the attempted murder or aided and abetted the attempted murder with the intent to kill, based on this division's prior unpublished opinion in Sanders's direct appeal. This argument is misguided. The only issue in Sanders's direct appeal was whether the trial court abused its discretion by denying Sanders's request for a continuance of his sentencing hearing to allow him to investigate potential exculpatory evidence. This division never concluded, and had no occasion to conclude, that Gee and Presley were direct perpetrators or acted with the intent to kill when they participated in the underlying shooting. The law of the case doctrine, therefore, has no application here. (See *People v. Barragan* (2004) 32 Cal.4th 236, 246 [the law of the case doctrine applies to principles or rules of law that are necessary to the prior decision].)

12

To summarize, insufficient evidence supports the trial court's finding that Presley and Gee acted with the intent to kill when they participated in the underlying shooting. The People, therefore, failed to prove beyond a reasonable doubt that Presley and Gee are guilty of attempted murder under a currently valid theory. In light of this conclusion, we do not address Presley's and Gee's other arguments challenging the court's order denying their resentencing petitions.

## DISPOSITION

The order denying Presley's and Gee's resentencing petitions is reversed. The matter is remanded to the trial court with directions to grant Presley's and Gee's petitions, vacate their attempted murder convictions, and resentence them under section 1172.6, subdivision (d)(3).


                                        VIRAMONTES, J.


WE CONCUR:


              STRATTON, P. J.



              WILEY, J.


13